UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUN COMMUNITIES, INC.,                  Case No. 23-10618

    Plaintiff,                                 F. Kay Behm
v.                                          United States District Judge

NAVIGATORS INSURANCE COMPANY,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS (ECF No. 17)**

This case is before the court on Defendant Navigators Insurance Company's ("Navigators") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 17). Plaintiff Sun Communities, Inc. ("Sun") filed their complaint on March 16, 2023, raising a single count of breach of contract (Count I) based on Navigators' alleged failure to participate in settlement discussions and contribute to the eventual settlement of a separate underlying lawsuit in good faith. (ECF No. 1, PageID.7). On August 7, 2023, Navigators filed the present motion for judgment on the pleadings, arguing they are entitled to judgment as a matter of law based on Sun's violation of the terms of the underlying insurance policy. (ECF No. 17, PageID.217). Sun filed their response

1

on August 28, 2023, and Navigators filed their reply on September 15, 2023. (ECF Nos. 18, 21). The court held a hearing on March 6, 2024, and both parties participated in oral argument. (*See* ECF No. 19). Considering the arguments made in the motion and all related pleadings, as well as those made at oral argument, the court finds Navigators is not entitled to judgment as a matter of law.

**I.      FACTUAL BACKGROUND**

Sun is a "fully integrated real estate investment trust that acquires, operates, develops, and expands manufactured home and RV communities." (ECF No. 1, PageID.2). As part of its operations, Sun maintains several layers of insurance coverage for any personal injury claims that may arise at its properties. *Id.* At the time of the events underlying this claim, Sun's primary insurance policy included a $1,000,000 coverage limit (the "Primary Policy"). (ECF No. 17, PageID.221). Sun's first excess insurance policy, issued by Allied World National Assurance Company, "provide[d] insurance in excess of Sun's $1,000,000 primary policy with a $10,000,000 policy limit" (the "Allied Policy"). *Id.* The policy at issue in this case, issued by Navigators (the "Navigators Policy"), covered a period from November 29, 2020 to November 29, 2021 and "provided up to $15,000,000[] in coverage for a 'loss' as defined in the policy," in excess of the $11,000,000 in total

underlying insurance coverage from the Primary Policy and the Allied Policy. (ECF No. 1, PageID.3). As such, the Navigators Policy was referred to as Sun's "second excess layer of coverage." *Id.*

On April 3, 2021, an incident occurred at a Sun property in Cape May, New Jersey, involving a three-year old child who died after falling into a septic tank. *Id.* Following the incident, the deceased child's parents filed suit against Sun in a New Jersey state court, raising clams for wrongful death, survival, negligent infliction of emotional distress, punitive damages, and intentional infliction of emotional distress, all based on Sun's alleged "failure to maintain the Property in a reasonably safe condition and [failure to] adequately inspect it" (the "Cape May Lawsuit"). *Id.*, PageID.3-4. Sun argues each of the claims included in the Cape May Lawsuit fell within the scope of the insurance coverage they maintained for the property, including the second excess layer of coverage provided by the Navigators Policy. *Id.*, PageID.4.

As part of the proceedings in the Cape May Lawsuit, Sun and its insurers participated in a private mediation with the opposing party after conducting several rounds of discovery. *Id.* It is not contested that, at this mediation, Sun received a settlement offer which "exceeded the primary insurer and first excess insurer's policy limits." (ECF No. 17, PageID.21). The parties' arguments diverge

as to the events that followed. Sun argues that, while "Navigators was present at the mediation," they "failed and refused to meaningfully participate in the proceeding, failed and refused to give meaningful consideration to the plaintiffs' settlement proposals, and ultimately refused to contribute any amount to the settlement reached at the mediation." (ECF No. 1, PageID.5). Sun argues they "faced exposure substantially in excess of the settlement amount if they went to trial" given the nature of the allegations and, as a result, they "reasonably determined that it would be in [their] best interests to contribute [their] own funds to a settlement." *Id.*, PageID.5-6. The amount contributed by Sun was "sufficient to make up the difference between the settlement amount and the Underlying Coverage, which…was within the second excess layer of coverage provided for in the Navigator's policy." *Id*.

Alternatively, Navigators argues they are not liable because they "did not agree to settlement and did not consent to Sun's voluntary payment of its own funds to settle the case." (ECF No. 17, PageID.219). As evidence, Navigators provides an e-mail which was sent to Sun's counsel during the mediation and prior to the settlement agreement being entered into by Sun. (ECF No. 17-2, email from Todd Hanson). This email includes an excerpt from the terms and

conditions of the Allied Policy[1] and states, in part: "[p]lease be advised Navigators does not consent to Sun Communities' funding of the proposed settlement. Navigators objects to Sun Communities incurring the obligation to fund a settlement of this case. Any such payment will be considered voluntary and at your own cost." *Id.*, PageID.239.  Navigators argues that, despite this objection, "Sun decided to voluntarily contribute its own funds to settle the [Cape May Lawsuit] anyway."  (ECF No. 17, PageID.220).  Sun eventually filed this lawsuit seeking damages from Navigators based on the amount they contributed to the settlement.  (ECF No. 1, PageID.8).

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) may be brought "[a]fter the pleadings are closed – but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Motions under Rule 12(c) are typically analyzed under the same standard as motions to dismiss under Rule 12(b)(6).  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549-50 (6th Cir. 2008).  As such, "all well-pleaded material allegations…of the opposing party must be taken as true, and

---

[1] The terms and conditions of the Allied Policy were expressly incorporated into the Navigators Policy.  (ECF No. 17-3, PageID.246) ("This insurance is subject to the provisions of the 'controlling underlying insurance' in effect at the beginning of this policy period unless a conflicting provision is contained in, or endorsed to, this policy").

the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the allegations included in the complaint are the primary focus of a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

**III.   ANALYSIS**

Navigators' motion argues they are entitled to judgment as a matter of law because (1) Sun violated the voluntary payment and no action clauses incorporated in the Navigators Policy by choosing to settle the Cape May Lawsuit without their consent, and (2) Sun was "not 'legally obligated to pay as damages' the amount for which it voluntarily settled the underlying claim." (ECF No. 17, PageID.212). The Navigators Policy incorporates two key clauses that impact Navigators' obligation to Sun for their contribution to the settlement amount. The "voluntary payment clause" states: "[n]o **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any

expense, other than for first aid, without our consent." (ECF No. 17-4, PageID.333, Allied Policy) (emphasis in original). The "no action clause" states: "[n]o person or organization has a right…to sue us under this policy unless all of its terms have been fully complied with." *Id.*, PageID.334. Under the plain language[2] of these clauses, Sun can only receive compensation if: (a) Navigators consented to the payment; and (b) Sun's liability was fixed by way of an entry of a final judgment or a settlement agreement signed by Navigators, Sun, and the claimant.

It is not contested that Sun entered into a settlement agreement in the Cape May Lawsuit without obtaining Navigators' express consent. (ECF No. 17, PageID.218-19) ("Sun decided not to negotiate further, and accept the underlying plaintiffs' settlement demand, by contributing its own funds to make up the difference between the amount provided by the two underlying insurers up to the plaintiffs' settlement demand."); (ECF No. 1, PageID.6) ("Sun reasonably determined that it would be in Sun's best interests to contribute its own funds to a settlement."). While they participated in the private mediation, it is also not

---

[2] Under Michigan law, if a "provision is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense." *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654 (1993) (citing *Farm Bureau Mutual Ins. Co. v. Stark*, 437 Mich. 175, 181 (1991)).

contested that Navigators was not a party to the final Cape May settlement agreement. *See id.* As such, Sun would ordinarily not be entitled to recover the settlement amount under the plain language of the Navigators Policy. However, Sun's complaint raises a slightly different claim, arguing that Navigators breached the underlying contract by acting in bad faith and "failing and refusing to meaningfully or reasonably participate in the mediation, meaningfully or reasonably evaluate the plaintiffs' settlement offers and/or contribute to settlement." (ECF No. 1, PageID.6).

Under Michigan law, "the covenant of good faith and fair dealing is an implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Rodgers v. JPMorgan Chase Bank NA*, 315 Mich. App. 301, 310-11 (2016). Michigan does not recognize an independent cause of action for a breach of the covenant, or duty, of good faith and fair dealing, but it may form the basis of a claim for breach of contract. *See Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476 (2003); *Gorman v. American Honda Motor Co., Inc.*, 302 Mich. App. 113, 133 (2013) ("The obligation of good faith is not an independent duty, but rather a modifier that requires a subject to modify. It is a principle by which contractual obligations...are to be measured and

8

judged."). A breach of contract claim based on the duty of good faith and fair dealing must include "some underlying contractual term to which the duty can apply." *Gorman*, 302 Mich. App. at 134. Courts apply this duty especially where a party makes its performance of that contractual term "a matter of its own discretion." *Burkhardt v. City Nat. Bank of Detroit*, 57 Mich. App. 649, 652 (1975); *Ferrell v. Vic Tanny Int'l, Inc.*, 137 Mich. App. 238, 243 (1984) ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith.").

Michigan courts have previously applied the covenant of good faith and fair dealing to insurance contracts and have found that insurers generally have an implied contractual duty to act in good faith when investigating an insurance claim and when negotiating a settlement. *Auman v. Fed. Ins. Co.*, 81 Mich. App. 740, 742 (1978) ("An insurance company in negotiating settlements has a duty to act in good faith with respect to the interest of the insured, and if it fails so to act, the insured may bring an action for the damages he suffers as a result.") (citing *City of Wakefield v. Globe Indem. Co.*, 246 Mich. 645, 650 (1929) ("The power to control settlements having been granted to insurer for the purpose of its own protection under the policy, it is bound to use the power in good faith for that

9

purpose.")); *see also Limatta v. Lukkari*, 185 Mich. App. 144, 146 (1990) ("The duty to use good faith in attempting to settle a claim runs…to the insured"); *Tibble v. Am. Physicians Cap., Inc.*, No. 306964, 2014 WL 5462573, at *6 (Mich. Ct. App. Oct. 28, 2014) ("An insured may sue its insurer for acting in bad faith in refusing to settle.") (citations omitted).  This duty to negotiate settlements in good faith arises once a lawsuit is filed against the insured.  *See Trident Fasteners, Inc. v. Selective Ins. Co. of S.C.*, No. 21-1439, 2022 WL 3088238, at *5 (6th Cir. 2022) ("The duty to negotiate settlements likewise requires a lawsuit before a duty to act in good faith arises.").  It is generally not considered "bad faith" for an insurer to refuse a settlement based on an honest error in judgment, a belief that they might defeat the action or keep the verdict within policy limits, an opinion that the settlement amount is excessive, or if there are legal defenses that have not yet been raised.  *See City of Wakefield*, 246 Mich. at 652-53; *Com. Union Ins. Co. v. Liberty Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 426 Mich. 127 (1986).[3]

---

[3] *City of Wakefield* and *Com. Union Ins. Co.* both involve a slightly different set of facts than this case. *City of Wakefield* involved a lawsuit brought by the insured against their primary insurer for a number of issues, including a refusal to accept a settlement agreement in good faith. *City of Wakefield*, 246 Mich at 646. *Com. Union Ins. Co.* involved the question of whether "an excess insurer has a cause of action against a primary insurer for the latter's failure to defend or settle a liability claim in good faith." *Com. Union Ins. Co.*, 426 Mich. at 111. However, in the absence of Michigan case law specifically discussing the duty of an excess liability insurer to the insured to settle a case in good faith, the discussion of what acts or omissions may constitute bad faith is helpful and persuasive.

However, bad faith may be found where there is a "failure to accept a reasonable compromise offer of settlement when the facts of the case or claim indicate obvious liability and serious injury," a "rejection of a reasonable offer of settlement within the policy limits," an "undue delay in accepting a reasonable offer to settle a potentially dangerous case within the policy limits where the verdict potential is high," a "failure to make a proper investigation of the claim prior to refusing an offer of settlement within the policy limits," "disregarding the advice or recommendations of an adjuster or attorney," or "serious and recurrent negligence." *Com. Union Ins. Co.*, 426 Mich. at 138-39. The conduct under scrutiny must be viewed in the broader context of the case and "must be considered in light of the circumstances existing at the time" of the settlement negotiations, not using "20-20 hindsight vision." *Id.*

Sun's complaint argues Navigators acted in bad faith by: (1) "failing and refusing to meaningfully or reasonably participate in the mediation;" (2) "failing and refusing the give meaningful or reasonable consideration to the plaintiffs' settlement proposals;" (3) "failing and refusing to reasonably consider and evaluate Sun's potential risk and exposure;" and (4) refusing to contribute to the settlement reached at mediation notwithstanding the substantial risk and exposure Sun faced and the unanimous agreement of the mediation participants

11

as to the reasonableness of the settlement." (ECF No. 1, PageID.8). Settlement was within Navigators' discretion under the contract and a lawsuit had already been filed in this case, so Navigators was under a duty to exercise good faith in negotiating, investigating, and settling the underlying case at the time of the mediation. *Auman*, 81 Mich. App. at 742. Viewing these factual allegations in the light most favorable to Sun, they have sufficiently stated a claim for breach of contract based on Navigators' alleged failure to participate in the settlement process in good faith. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570 (the complaint need only allege "enough facts to state a claim to relief that is plausible on its face.").

In opposition, Navigators relies on two key cases, *Coil Anodizers* and *Tenneco*, to argue the terms of the underlying contract, including the voluntary payment and no action clauses, preclude Sun from recovering any portion of its settlement payment regardless of the underlying circumstances. (ECF No. 17, PageID.224-30). In *Coil Anodizers, Inc. v. Wolverine Ins. Co.*, the plaintiff's aluminum anodizing process caused a defect in their products, which was not realized until after they were delivered to various customers. 120 Mich. App. 118, 120 (1982). The plaintiff's customers then sought to hold them financially responsible for the cost of replacing the defective aluminum. *Id.* The plaintiff

informed its insurance carrier about the damage, but they "denied liability and refused to aid plaintiff in investigating the claim." *Id.* Despite the existence of voluntary settlement and no action clauses in their contract, the plaintiff nevertheless agreed to pay a settlement to their customers. *Id.* The court held that the plaintiff's decision to enter into this voluntary settlement, in violation of the terms of their contract, "effectively excused defendant from liability." *Id.* at 123 ("That plaintiff may have felt a certain 'compulsion' to settle in order to retain the goodwill of its customers does not render the settlement any less voluntary…"). However, this case is distinguishable, as it involved only the question of whether the plaintiff could recover from the defendant under their contract; it did not involve a claim for breach of that contract based on the defendant's separate duty to participate in settlement negotiations in good faith. Additionally, the duty to settle in good faith had not yet attached, as no formal legal proceedings had been initiated. *Id.* at 121 ("since it is undisputed that formal proceedings were never begun…"); *see also Trident Fasteners, Inc.*, 2022 WL 3088238, at *5.

*Tenneco, Inc. v. Amerisure Mut. Ins. Co.*, similarly involved the argument that "plaintiff had forfeited any coverage by making 'voluntary' payments and entering into settlements that defendant had not approved," in violation of the

13

underlying contract. 281 Mich. App. 429, 433 (2008). Like in *Coil Anodizers*, the court held that "the 'voluntary payments' and the 'no action' clauses in the policies at issue preclude defendant's liability under the policies" for their voluntary settlements. *Id.* at 462-63. However, again, this case involved the defendant's duty to compensate the plaintiff strictly under the terms of the contract, not a violation of any separate duty to act in good faith. Notably, the court found the plaintiff had failed to give defendant adequate "notice of claims, suits, or demands" which "forever cost defendant the opportunity to contest plaintiff's liability, engage in settlement negotiations, or seek a judicial determination of its liability to plaintiff under the policies." *Id.* at 451 ("the lack of notice has materially impaired its ability to contest its liability to plaintiff and plaintiff's liability to the government…"). This is unlike the case at hand, where neither party contests that Navigators' counsel was present at the mediation and had an opportunity to engage in the settlement process. Navigators also cites *Tenneco* to support its argument that Sun's payment was fully voluntary, because there were a number of other options Sun could have exhausted before agreeing to the settlement amount. (ECF No. 17, PageID.228) ("Sun had other choices, not least of which would have been to refuse to pay its own money to satisfy the underlying plaintiffs' demand at mediation and instead allow Navigators the

14

opportunity to undertake continued negotiations with the underlying plaintiffs."). While it may be true that Sun had other options, as is almost always true in the course of legal proceedings, the mere existence of these other options did not excuse Navigators from their duty under Michigan law to participate in settlement discussions in good faith.

Finally, Navigators argues that "Sun's claim also fails…[because] its liability was never judicially determined and thus is not for amounts that Sun was 'legally obligated to pay as damages,' in contravention of the express requirement in the Policy's insuring agreement."  (ECF No. 17, PageID.231).  While Navigators is correct that there was never a trial or a binding judgment entered against Sun, there was a binding settlement agreement.  *See Dabish v. Gayar*, 343 Mich. App. 285, 289 (2022) (citing *Reicher v. SET Enterprises, Inc.*, 283 Mich. App. 657, 665 (2009)) ("A settlement agreement is a binding contract.").  Navigators cites *Detroit Water Team Joint Venture v. Agric. Ins. Co.*, to argue that a legal obligation to pay requires "either a judicial determination of liability or a settlement between the insurer, the insured, and the claimant," neither of which exist here. (ECF No. 17, PageID.232) (citing 371 F.3d 336, 339 (6th Cir. 2004)).  However, *Detroit Water Team Joint Venture* involved a situation where the plaintiff proactively paid the relevant funds before *either* a judicial determination or

15

settlement agreement had been entered. *Detroit Water Team Joint Venture*, 371 F.3d at 338 ("Detroit Water Team immediately repaired the damaged electrical system and notified American National and Agricultural of its expenses."). This is unlike the case at hand, where Sun paid the funds after settlement negotiations and pursuant to a valid settlement agreement. The fact that there was no judgment entered after a trial and Navigators did not sign the settlement agreement does not remove Navigators' duty to participate in the underlying settlement process in good faith.

### IV. CONCLUSION

For the reasons stated above, Sun has sufficiently stated a claim for breach of contract based on the covenant of good faith and fair dealing, and Navigators is not entitled to judgment as a matter of law. Navigators' motion for judgment on the pleadings is **DENIED.**

**SO ORDERED**.

Date: March 13, 2024                         s/F. Kay Behm
                                             F. Kay Behm
                                             United States District Judge